IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BARBARA V. EVANS                                                                                      PLAINTIFF

v.                                          CIVIL NO. 1:12-cv-1038

JP MORGAN CHASE BANK, N.A.;
*et al.*                                                                                                      DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment (ECF No. 37) filed on behalf of Plaintiff Barbara V. Evans ("Evans") and a Cross Motion for Summary Judgment (ECF No. 41) filed on a behalf of Defendants JP Morgan Chase Bank, N.A ("JP Morgan"); EMC Mortgage LLC f/k/a EMC Mortgage Corporation ("EMC"); Bank of America, N.A. ("Bank of America"); and Deutsche Bank National Trust Company ("Deutsche Bank"). Plaintiff has responded. (ECF No. 46). Defendants have replied. (ECF No. 51). The matter is ripe for the Court's consideration.

## BACKGROUND

This case arises from a promissory note made by Evans and her now deceased husband to a lender in February 1998. The note was for $25,400, payable over 15 years at 11.25% interest. A lien on Evans's home secured the note. The note subsequently passed to EMC.

In September 2004, Evans filed for Chapter 13 bankruptcy in the Western District of Arkansas. EMC filed a claim in bankruptcy court for $22,257.03, including an arrearage of $2,685.21. The Chapter 13 repayment plan required Evans to pay back $22,257.03 to EMC at

1

11.15% interest.  Evans made all payments under the Chapter 13 plan, and in April 2009, Evans received notice of her discharge from the debt.

Evans hired an attorney, Albert Hanna ("Hanna"), to assist her in obtaining the release of the mortgage lien from EMC.  On February 16, 2010, Hanna faxed a letter to EMC asking that it release the mortgage.  However, on or about March 11, 2010, Evans received a bill from EMC for a $6,118.64 payment on a principal balance of $11,758.85.  In response, Hanna again wrote to EMC requesting a release of the mortgage lien and an investigation into the mortgage accounting.

Despite Hanna's correspondence, in April 2010, EMC sent another bill to Evans asking for $6,495.34 on the same $11,758.85 principal balance.  Again, on May 11, 2010, Evans received another statement from EMC indicating a payment amount due of $6,872.04 and a principal balance of $11,758.85.  Shortly thereafter, on May 20, 2010, Evans received an acceleration warning letter from EMC stating that she was in default for failure to make monthly installments.

On July 31, 2010, Hanna wrote EMC again requesting an investigation of the account. Finally, on August 6, 2010, Evans received a letter from EMC stating that Evans's request for an investigation had been forwarded to the proper department and she should allow more time for that department to investigate the matter.  On October 12, 2010, having not received a response, Hanna wrote EMC again requesting an investigation.

In November 2010, Wilson & Associates, PLLC ("Wilson"), EMC's counsel, wrote Evans attempting to collect a debt.  The letter threatened foreclosure if Evans did not pay or dispute a debt of $16,945.84 within 30 days.  Wilson also sent Evans an additional letter referring her to Chase Home Finance, LLC to learn about available options for remaining in her

home despite a foreclosure. Hanna wrote Wilson a letter and informed Wilson that Evans had been fully discharged of her debt to EMC. Hanna enclosed his communications with EMC and copied EMC in the letter. In late November, Wilson responded to Hanna acknowledging his letter and reporting that the letter had been forwarded to EMC. Additionally, in late November, the Brad Hendricks Law Firm sent Evans a solicitation letter stating that "public records indicate . . . the mortgage company is attempting to foreclosure on your home."

In December 2010, Wilson wrote Evans again; however, on this occasion, it wrote on behalf of Bank of America "as Trustee for certificate holders of EMC Mortgage Loan Trust." The letter reported that the property was scheduled to be sold at a foreclosure sale on January 26, 2011, at the Union County Courthouse in El Dorado. After receiving notice of the sale, Hanna contacted Wilson and again reported that Evans had already paid off the note. Hanna spoke with Wilson's agent, J.P. Sellers. J.P. Sellers informed Hanna that EMC wanted to proceed with the foreclosure sale despite not having verified whether the debt was owed. However, for reasons unknown to the Court, the sale was cancelled.

In March 2011, EMC wrote Evans reporting that the loan servicing for her mortgage was transferred to JP Morgan but JP Morgan would use the brand name EMC when servicing the loan. In April 2011, EMC wrote Evans again to give notice of Evans's debt. The communication was a legal requirement. The letter stated that the notice was "required by law to ensure the amount of debt reflected on the account matches your records." The letter stated that the debt came to $17, 626.94.

In September 2011, Evans received her last correspondence from EMC. The letter referred to Evans's mortgage as being in foreclosure. Because of her failed attempts to settle the

issue through written communication, Evans reopened her bankruptcy case to file an adversary proceeding against JP Morgan and EMC.

On November 14, 2011, JP Morgan filed a release deed on Evans's house and wrote her a check for an overpayment of $968.95 from her escrow account. Evans's attorney returned the check to avoid an accord-and-satisfaction defense. Meanwhile, the bankruptcy court granted Evans's request to reopen the bankruptcy case, and Evans filed an adversary complaint in that court. The parties later stipulated to withdraw the bankruptcy complaint and refile it in this Court. Evans brought thirteen claims against JP Morgan, EMC, Bank of America, and Deutsche Bank.[1]

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution

---

[1] Deutsch Bank executed the release of the lien.

affects the outcome of the case. *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*.  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

## DISCUSSION

Evans has seven remaining claims against Defendants:[2] (1) civil contempt; (2) violation of Ark. Code Ann. 18-80-104; (3) breach of contract; (4) slander of title; (5) conversion; (6) violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"); and (7) gross negligence.[3] The Court will now address each claim separately.

**1. Civil Contempt**

Evans argues that the Court should hold Defendants in civil contempt for failure to comply with the bankruptcy discharge.  Defendants argue that a finding of civil contempt is not warranted in this case because Defendants eventually complied with the order and their previous failure to comply did not result from bad faith or intentional defiance.

In a civil contempt proceeding, the moving party must prove, by clear and convincing evidence, that the defendant allegedly in contempt violated the court's order.  *Chi. Truck Drivers*

---

[2] For the remainder of this memorandum opinion, the Court will refer to JP Morgan, EMC, Bank of America, and Deutsche Bank collectively as "Defendants" for purposes of clarity.

[3] This Court dismissed six of Evans's claims in its Order on Defendants' Motion to Dismiss. (ECF No. 29).

*v. Brotherhood Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). Once the moving party has shown that the defendant violated the court's order, the burden shifts back to the defendant to show that compliance was impossible. *Id.* To demonstrate impossibility, the Eighth Circuit requires a defendant to show: (1) that he was unable to comply, explaining why categorically and in detail; (2) that his inability to comply was not self-induced; and (3) that he made, in good faith all reasonable efforts to comply. *United States v. Santee Sioux of Neb.*, 254 F.3d 728, 736 (8th Cir. 2001). The defendant's intent is irrelevant. *In re Statmore*, 176 B.R. 512, 514 (D. Neb. 1994) (citing *McComb v. Jacksonville Paper Co.*, 334 U.S. 187, 191 (1949)). Because the contempt power is a substantial one, it should be used sparingly and not lightly invoked. *Hartman v. Lying*, 884 F.2d 1103, 1106 (8th Cir. 1989).

In this case, the Court finds Defendants in civil contempt. The parties do not dispute that Defendants violated the bankruptcy court's discharge for more than two years when they sent Evans bills demanding mortgage payments and threatened foreclosure of her home. However, Defendants offer no evidence to demonstrate that compliance with the bankruptcy order was impossible. Defendants merely argue that their non-compliance resulted from mistake and miscommunication and did not result from intentional conduct. Mistake and miscommunication do not amount to inability to comply as required by the Eighth Circuit. *See Santee Sioux*, 254 F.3d at 736. Moreover, Defendants' intent is irrelevant to a finding of civil contempt. The Court recognizes that its contempt power should be used sparingly. However, the Court finds that Defendants' failure to comply with the bankruptcy discharge for over two years warrants a finding of civil contempt. Accordingly, the Court will now determine what sanctions are appropriate.

A court can impose two kinds of civil contempt sanctions: (1) coercive; and (2) compensatory. *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992). A coercive sanction is designed to force the offending party to comply with a court's order. *Jones v. Clinton*, 57 F. Supp 719, 723 (E.D. Ark. 1999). A compensatory sanction is designed to compensate the non-offending party for the damage they incurred as a result of the offending party's contempt. *Id.* Compensatory sanctions may include attorneys' fees and other costs incurred in prosecuting the contempt motion. *Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (per curium).

Evans argues that the Court should award coercive sanctions and compensatory damages. The Court disagrees. The Court need not impose coercive sanctions because Defendants eventually complied with the bankruptcy discharge and released the lien. However, the Court agrees with Evans that compensatory sanctions are appropriate under these circumstances. As a result of Defendants' failure to comply with the bankruptcy order, Evans had to hire attorneys to obtain a release of the lien and to prevent the foreclosure of her home. Accordingly, the Court finds that Defendants' conduct warrants an award of compensatory sanctions to compensate Evans for her attorneys' fees.

Defendants argue that Evans should only be compensated for attorneys' fees she incurred when Defendants were not incompliance with the bankruptcy order, before the release of the lien. In other words, Defendants argue that Evans's attorneys' fees should not include costs associated with the prosecution of this case, which followed the release of the lien. The Court disagrees with Defendants. The Court finds that compensatory sanctions are appropriate to compensate Evans for her attorneys' fees incurred prior to the lien release as well as attorneys' fees she incurred for prosecution of this contempt motion. Without the prosecution of this

contempt motion, Evans would not receive compensation for costs incurred prior to the lien release.

Evans also argues that she is entitled to damages for weight gain and increased blood pressure she suffered due to the stress caused by Defendants' contempt. Defendants argue that Evans's weight gain and increased blood pressure are emotional distress damages and are moot as a result of this Court's Order on Defendants' Motion to Dismiss (ECF No. 28). In the Order, this Court dismissed Evans's civil contempt claim for emotional distress damages because civil contempt "'does not encompass redress for [emotional distress injuries].'" (ECF No. 28) (citing *McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir. 1992)). Evans responds that the damages she seeks for weight gain and increased blood pressure are not emotional distress damages but are compensation for medical care to treat the sicknesses.

The Court finds Evans's assertion unpersuasive. Evans reported that she suffered weight gain and increased blood pressure "due to the stress caused by the actions of [] Defendants." (ECF No. 4). Thus, the weight gain and increased blood pressure are merely injuries resulting from the stress caused by Defendants' conduct. And, as this Court has stated, civil contempt "'does not encompass redress for [emotional distress injuries].'" (ECF No. 28) (citing *McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir. 1992)).

**2. Violation of Ark. Code Ann. § 18-80-104**

Evans argues that Defendants' violated of Ark. Code Ann. § 18-40-104 and thus she is entitled to the return of all funds paid on the mortgage account with the exception of monies paid for insurance and taxes. Defendants do not deny their liability under the Arkansas statute but argue that the Court should limit Evans recovery to her actual damages.

Ark. Code Ann. § 18-40-104(a) provides: "If any mortgagee, or his or her executor, administrator, or assignee, shall receive full satisfaction for the amount due on any mortgage, then, at the request of the person making satisfaction, the mortgagee shall acknowledge satisfaction thereof on the margin of the record in which the mortgage is recorded." Ark. Code. Ann. § 18-40-104(c) allows sixty days for acknowledgment of satisfaction after request for release is made. Any person who receives satisfaction and does not acknowledge it within that sixty-day time period "shall forfeit to the party aggrieved any sum not exceeding the amount of the mortgage money, to be recovered by a civil action." Ark. Code. Ann. § 18-40-104(c). "[The statute] is intended to serve as a penalty against a mortgagee who fails to acknowledge satisfaction of a mortgage once it has been satisfied." *Nationsbanc Mortg. Corp. v. Hopkins*, 82 Ark. App. 91, 99, 114 S.W.3d 757, 763 (2003) (citing *Reed v. Frauenthal*, 133 Ark. 544, 202 S.W. 700 (1918)). It contains no express requirement that the amount awarded under it bear a relation to damages actually caused to the aggrieved party. *Id.* However, the Arkansas Supreme Court has held that in order for the penalty to be imposed, an actual loss must be suffered. *See id.* (citing *Pierce v. Center*, 200 Ark. 19, 138 S.W.2d 391 (1940)).

In this case, the parties do not dispute that Evans made written demands for the release of the lien and Defendants did not release the lien within the sixty-day period. Specifically, Defendants did not release the lien for over two years. Thus, the Court's only task is to determine whether Evans is entitled to an award under the statute.

Here, there is no question that Evans suffered an actual loss in this case. As a result of Defendants' violation of the statute, Evans was forced to hire attorneys to obtain a release of the lien and prevent foreclosure of her home. Therefore, under these circumstances, the Court finds

that a penalty under the statute is warranted.  Accordingly, the Court awards Evans $25,400 for Defendants' violations of Ark. Code Ann. § 18-40-104.[4]

**3. Breach of Contract**

Evans argues that Defendants are liable for breach of contract because Defendants failed to release the lien after Evans made the final payment on the loan as required by the promissory note between Evans and Defendants.  Defendants argue that the Court may not consider Evans argument because Evans did not raise the argument in her complaint.  Specifically, Defendants argue that Evans alleged in her complaint that Defendants breached the plan confirmed by the Bankruptcy, not the promissory note.   In the alternative, Defendants argue that if the Court finds them liable for breach of contract, damages are subsumed by an award for violation of Ark. Code Ann. § 18-40-104.

The Court need not consider the merits of Evans's breach-of-contract claim because the Court has already awarded her any damages she may be entitled to under that theory.  "'Where the law furnishes a party with two or more concurrent and consistent remedies, he may prosecute one or all until satisfaction is had; but satisfaction of one is a satisfaction of all.'"  *Haney v. Phillips*, 72 Ark. App. 202, 205, 35 S.W.3d, 373, 375 (2000) (quoting *Davis v. Lawhon*, 186 Ark. 51, 52 S.W.2d 887, 888 (1932)).  Here, Evans claims she is entitled to actual damages and attorneys' fees for Defendants' alleged breach.  As for Evans's attorneys' fees, the Court has already awarded her compensation for her attorneys' fees in her civil contempt claim.  As for actual damages, Evans only alleges emotional distress damages, and emotional distress damages

---

[4] The parties dispute whether "mortgage money" as defined by Ark. Code Ann. § 18-40-104 includes interest paid on the mortgage.  Evans's mortgage amount was $25,400 without interest. Because the Court awards Evans damages of the mortgage amount without interest, the issue whether "mortgage money" includes interest is moot in this case.

are not ordinarily allowed for claims of breach of contract. *Brickey v. Lacy* , 245 Ark. 860, 86-64, 435 S.W.2d 443, 445 (1968).

For example, in *Brickey v. Lacy*, the Arkansas Supreme Court reduced a trial court's award of damages for mental suffering for the plaintiffs' breach-of-contract claim. *Id.* at 86-64, 435 S.W.2d at 445. The plaintiffs were unlawfully evicted from their farm and sued for breach of contract. *Id.* The trial court awarded damages for mental suffering. *Id.* The Arkansas Supreme Court affirmed the judgment for breach of contract but reduced the damages by the amount of damages for mental suffering. *Id.* The court held that in a breach-of-contract claim, compensation for mental suffering is only given in extreme circumstance, and the situation before the court did not meet the test. *Id.* (citing Restatement (First) of Contracts § 341 (1932)).

In this case, like in *Brickey*, the circumstances do not warrant damages for emotional distress. Therefore, because the Court has awarded Evans her attorneys' fees, the only damages she may be entitled to for breach of contract, the Court need not consider this claim.

### 4. Slander of Title

Evans argues that Defendants slandered title to her property when they filed a Notice of Default and Intention to Sell with the Circuit Clerk of Union County, Arkansas despite their knowledge of the discharge order. Defendants argue that Evans's cause of action fails because Evans has not established two essential elements of this tort: (1) special damages and (2) malice.

"Slander of title is an action based on malicious publication of a false matter that disparages the title to property." *Fleming v. Cox Law Firm*, 363 Ark. 17, 20, 210 S.W.3d 866, 868 (2005). In an action for slander of title, the plaintiff must establish that the defendant acted with malice in making a slanderous statement regarding the title of another's property and the defendant's defamatory statement resulted in special damage to the plaintiff. *See Hardy v.*

11

*Bartmess*, 696 F. Supp. 2d 1008, 1015 (E.D. Ark. 2010)(citing *Sinclair Refining Co. v. Jones*, 188 Ark. 1075, 70 S.W.2d 562, 563 (1934)); *Heuer v. Basin Park Hotel and Resort*, 114 F. Supp. 604, 613 (W.D. Ark. 1953) ("[S]pecial damage is a necessary element of a claim for disparagement of property."). Accordingly, to bring a claim for slander of title under Arkansas law, Evans must establish that: (1) Defendants' statement resulted in special damages; and (2) Defendants acted with malice. In this case, the Court agrees with Defendants that Evans has not established special damages.

Evans argues that her emotional distress amounts to special damages but cites no Arkansas case law to support this argument. "[I]t is…well established that mental distress or anguish is not within the range of special damages proximately resulting from a slander of title action." James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Actions for Slander of Title*, 4 A.L.R. 4th 532 (1981); Restatement (Second) of Torts § 633 (3rd ed. 1977) ("Neither emotional distress nor bodily harm resulting therefrom is sufficient to support an action for disparagement of property."). Thus, Evans has failed to establish special damages. Because Evans has failed to establish special damages, a requisite element for a slander-of-title claim, the Court need not determine whether Defendants acted with malice. Accordingly, Evans's slander-of-title claim fails.

### 5. Conversion

Evans claims that Defendants converted $978.95 in escrow funds she submitted to Defendants through her mortgage payments. Specifically, Evans argues that Defendants converted $978.95 when they maintained possession of the money after the satisfaction of her lien. Evans acknowledges that Defendants attempted to return the funds in November 2011 and that she refused the funds to avoid an accord-and-satisfaction defense. Thus, she concedes that

any alleged conversion ended at the time. However, Evans argues that she is entitled to the $978.95 plus interest from April 2009, when she paid the funds, to November 2011, when Defendants attempted to return the money. Defendants argue that Evans's conversion claim fails because Defendants legally acquired possession of the escrow money and Evans never requested its return.

Under Arkansas law, the tort of conversion is committed when a party wrongfully commits a distinct act of dominium over the property of another inconsistent with the owner's rights. *Buck v. Gillham*, 80 Ark. App. 375, 379, 96 S.W.3d 750, 753 (2003). Conversion is most commonly committed by "an unauthorized transfer or disposal of possession of [property] to one who is not entitled to [it]." *McKenzie v. Tom Gibson Ford, Inc.*, 295 Ark. 326, 330, 749 S.W.2d 653, 655 (1988) (quoting W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 15 (5th ed. 1984)). An owner who consents to a party's possession of the property has no claim for conversion, unless the owner subsequently revoked consent and the other party refused to return the property. *Tucker v. Scarbrough*, 268 Ark. 736, 738, 596 S.W.2d 4, 6 (Ct. App. 1980); Howard W. Brill, *Arkansas Law of Damages* § 33:7 (5th ed. 2004).

Here, the parties do not dispute that Evans consented to Defendants' possession of the escrow funds when she submitted the money through her mortgage payments. Further, Evans offers no evidence that she revoked consent and Defendants refused to return the property. In fact, Evans concedes that Defendants returned the property in November 2011. Therefore, because Evans consented to Defendants' possession of the funds and never revoked such consent, Evans's conversion claim fails.

**6. Violation of ADTPA**

Evans argues that Defendants violated the ADTPA when they failed to release the lien after Evans had fully performed under the bankruptcy payment plan. Specifically, Evans alleges that Defendants' failure to release the lien amounted to an "unconscionable" business practice. (ECF No. 21). Defendants deny liability under the ADTPA and further argue that even if Evans can establish an ADTPA violation, Evans's damages are limited to her attorneys' fees.

The ADTPA provides a private right of action to "any person" who suffers actual damage or injury as a result of a violation of the Act. Ark. Code Ann. § 4-88-113(f). The elements of a cause of action are: (1) a deceptive consumer-oriented act or practice which is misleading in a material respect and (2) injury resulting from such an act. *Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 2011 Ark. App. 347, at 18, 384 S.W.3d 540, 552. A prevailing plaintiff may recover her actual damages and reasonable attorneys' fees. *Wallis v. Ford Motor Co.*, 362 Ark. 317, 328, 208 S.W.3d 153, 162 (2005). However, to recover damages for mental anguish under the ADTPA, the plaintiff must prove that she suffered a physical injury that caused mental distress, or the defendant violated the Act with the intent to cause mental distress. *See FMC Corp., Inc. v. Helton*, 360 Ark. 465, 483, 202 S.W.3d 490, 503 (2005) (holding that the appellees could not recover damages for mental anguish because the appellees did not allege that the appellants violated the ADTPA with the intent to cause mental distress or that they suffered a physical injury).

In this case, the Court need not address Evans's ADTPA claim because the Court has awarded Evans all the damages she may entitled to under this theory. The Court awarded Evans attorneys' fees in her civil contempt claim. Further, Evans cannot recover damages for her emotional distress. Evans does not allege that Defendants acted with the intent to cause mental

14

distress. Evans claims that Defendants were grossly negligent. Additionally, Evans does not allege that she suffered a physical injury that resulted in mental anguish. Accordingly, Evans cannot recover damages for mental distress. Because the Court has already awarded Evans all the damages she may recover for Defendants' alleged violation of the ADTPA, the court need not consider this claim on the merits.

**7. Gross Negligence**

Evans asserts that Defendants were grossly negligent when they failed to release the lien. As result of Defendants' alleged negligence, Evans claims actual damages for attorneys' fees, damages for mental suffering, and punitive damages. Defendants deny they were grossly negligent and further argue that even if the Court finds gross negligence, Evan's damages are limited to her attorneys' fees because emotional distress damages and punitive damages are not available for a gross negligence claim.

The Court agrees with Defendants that Evans's damages are limited to her attorneys' fees. As to Evans's damages for emotional distress, Arkansas law does not allow damages for mental anguish under a theory of negligence. *FMC Corp.*, 360 Ark. at 481, 202 S.W.3d at 502. As for punitive damages, under Arkansas law, "gross negligence is not sufficient to justify punitive damages." *Nat'l By-Products, Inc. v. Searcy House Moving Co., Inc.*, 292 Ark. 491, 494, 731 S.W.2d 194, 196 (1987); *Freeman v. Anderson*, 279 Ark. 282, 286, 651 S.W.2d 450, 452 (1983) ("Negligence alone, however gross, is not a sufficient basis to justify the award of punitive damages."). Accordingly, the only damages Evans may be entitled to under a theory of gross negligence is attorneys' fees, and the Court has already awarded Evans these damages. Therefore, the Court need not address Evans's gross negligence claim.

CONCLUSION

Plaintiff's Motion for Summary Judgment (ECF No.37) and Defendants' Cross Motion for Summary Judgment (ECF No. 41) are **GRANTED IN PART** and **DENIED IN PART** as follows.  As to Plaintiff's civil contempt claim, the Court awards Plaintiff attorneys' fees to the date of this Order.  Plaintiff should produce an affidavit from her attorneys of expenses incurred within seven (7) days of the date of this Order.  As to Plaintiff's claim for a violation of Ark. Code Ann. § 18-80-104, the Court awards Plaintiff $25,400 for Defendants' violations.  After the reasonable attorneys' fees are determined, the Court will enter a judgment.

Plaintiff's claim for breach of contract is **DISMISSED WITH PREJUDICE**.  Plaintiff's claim for slander of title is **DIMISSED WITH PREJUDICE**.  Plaintiff's conversion claim is **DISMISSED WITH PREJUDICE**.   Plaintiff's ADTPA claim is **DISMISSED WITH PREJUDICE.**  Plaintiff's gross negligence claim is **DISMISSED WITH PREJUDICE.**  An order of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 3rd day of February, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge